IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Albarr Abdullah a/k/a Albert Legare a/k/a Albarr-Ali Abdullah,<br><br>                   Plaintiff,<br><br>v.<br><br>Warden Reynolds, *of Kershaw*; Dennis Paterson, *Deputy Director of Operation*; Sgt. Wiggins; Lt. Lawery; and Lt. Bouie,<br><br>                   Defendants. | Civil Action No.2:12-cv-03499-RMG-BHH<br><br>**REPORT AND RECOMMENDATION<br>OF MAGISTRATE JUDGE** |

    The Plaintiff, a state prisoner proceeding *pro se*, seeks relief pursuant to Title 42, United States Code, Section 1983. This matter is before the Court upon Plaintiff's Motion "for Injunctive Relief" (Dkt. No. 29) and Defendants' Motion for Summary Judgment (Dkt. No. 40).

    Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1) and Local Rule 73.02(B)(2)(e), D.S.C., all pretrial matters in cases involving *pro se* litigants are referred to a United States Magistrate for consideration.

    The Plaintiff brought this action on or about December 7, 2012. (See Dkt. No. 1-2; see also Dkt. No. 6.) On February 12, 2013, the undersigned recommended summary dismissal of the following Defendants: Kela Thomas, Director of SCDPPPS; Valerie Suber, Parole Exam Manager; Tommy Evans, SCDPPPS Legal Counsel; and Ms. Hough, KCI Grievance Coordinator. (See Dkt. No. 15.) On November 5, 2013, the Honorable Richard Gergel dismissed these defendants. (See Dkt. No. 59.) On or about May 22, 2013, Plaintiff filed a Motion "for Injunctive Relief"; Defendants oppose this motion. (Dkt. No. 19; Dkt. No. 32.) On August 16, 2013, the remaining Defendants filed a Motion for Summary Judgment. (Dkt. No. 40.) By order filed August 19, 2013, pursuant to Roseboro v. Garrison, 528 F.2d

309 (4th Cir. 1975), the Plaintiff was advised of the summary judgment procedure and the possible consequences if he failed to adequately respond to the motion. (Dkt. No. 31.) Plaintiff filed his Response in Opposition on or about October 24, 2013. (Dkt. No. 57.)

## PROCEDURAL FACTS

Plaintiff, who is confined at Kershaw Correctional Institution ("KCI"), alleges claims pursuant to 42 U.S.C. § 1983. In Claim 1, Plaintiff asserts that his "parole hearing dates have always been every two years," and when he was not interviewed "within the two year period as usual," he filed a grievance. (Dkt. No. 1 at 3 of 6.) Plaintiff alleges that he alerted Kela Thomas, director of SCDPPS, and Valerie Suber, SCDPPS's parole examinations manager, and neither took corrective action. (Id.) Plaintiff states, "I have a liberty interest in parole, parole eligibility, and a timely hearing." (Id.)

In Claim 2, Plaintiff alleges that he was placed in the Special Management Unit ("SMU") on October 9, 2008, while he was housed at Ridgeland Correctional Institution, but he "was never pr[operly] charged with a disciplinary infraction or any type of notification to support the punishment." (Dkt. No. 1 at 4 of 6.) Plaintiff states that he filed grievances and sent letters to Warden Cohen, who "refused to reply." (Id.) According to Plaintiff, after he was transferred to KCI, he was "place[d] again in SMU after only a few days in general population." (Id.) Plaintiff alleges that he sent letters, filed grievances, and wrote requests "complaining to Warden Cohen, Warden Reynolds of Kershaw and Dennis Patterson Deputy Director of SCDC Operations," but no one replied. (Id.) Plaintiff complains that he was unable to accrue earned work credits ("EWC") "due to illegal housing on SMU for no reason." (Dkt. No. 1 at 4-5 of 6.)

On or about December 21, 2012, Plaintiff added a claim to his Complaint. (Dkt. No. 6.) In this additional claim, Plaintiff asserts that on October 9, 2008, Defendants Wiggins, Lawery, and Bouie "confiscated [Plaintiff's] legal box at Ridgeland Correctional Institution.

2

(Dkt. No. 6 at 1 of 2.) Plaintiff alleges that although his property was inventoried, they "refused to list [Plaintiff's] legal box as part of the items which were taken from [Plaintiff]." (Id.) Plaintiff appears to allege he did not know the legal box would not be returned until he was released from the SMU. (Id. at 1-2.) Plaintiff states,

> I requested the return of my legal box [upon his release from SMU] again as these legal box materials were the core of my proceeding with my case in an effort to obtain my release. As of the current date I have been deprived of my legal box which has delayed my access to the courts and obstructed the effectivity of my court pleadings. . . . If it were not for this action of these defendants I would have been released from prison with support of the materials in my legal box several years ago.

(Dkt. No. 6 at 2 of 2.)

In the "Relief" section of his Complaint, Plaintiff seeks $300,000 "for each month of incarceration under the said conditions of this complaint from each Defendant." (Dkt. No. 1 at 6 of 6.)

## APPLICABLE LAW

### Summary Judgment Motion Standard

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth., 597 F.3d 570, 576 (4th Cir. 2010) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). In ruling on a motion for summary judgment, "'the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor.'" Id.

3

(quoting Hunt v. Cromartie, 526 U.S. 541, 552 (1999)); see also Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-24 (4th Cir. 1990).

## **DISCUSSION**

I. Defendants' Motion for Summary Judgment (Dkt. No. 40)

As noted above, Defendants Thomas, Suber, Evans, and Hough have all been dismissed from the instant action. (See Dkt. No. 59.) The undersigned will therefore address the claims against Defendants Reynolds, Paterson, Wiggins, Lawery, and Bouie. Plaintiff's remaining claims are the claims related to his placement in SMU and the "confiscation" of his legal box. (See generally Dkt. No. 1; Dkt. No. 6.) For the reasons set forth below, the undersigned recommends granting in part and denying in part Defendants' Motion for Summary Judgment (Dkt. No. 40).

### **A. Claims Related to Placement in SMU**

As noted above, Plaintiff complains that he was placed in SMU on October 9, 2008, but "was never pr[operly] charged with a disciplinary infraction or any type of notification to support the punishment." (Dkt. No. 1 at 4 of 6.) Plaintiff asserts that, contrary to SCDC policy, the institutional classification committee failed "to provide a review of [Plaintiff's] status on SMU." (Id.) According to Plaintiff, he was unable to accrue earned work credits during the three years he was "illegally" held in SMU. (Id. at 5 of 6.)

Defendants contend they are entitled to summary judgment on this claim for numerous reasons. (See generally Dkt. No. 40-1.) Defendants first assert this claim is barred by the statute of limitations. (See Dkt. No. 40-1 at 8-9.) According to Defendants, Plaintiff received the denial of his relevant Step 2 grievance on November 12, 2009, but did not file the instant action until December 7, 2012. (Id. at 9.) It is well settled that the statute of limitations for Plaintiff's § 1983 claim is three years. In determining the proper statute of limitations in a Section 1983 claim, the United States Supreme Court has found that the

4

federal court should adopt the state law statute of limitations for personal injury. See Wilson v. Garcia, 471 U.S. 261, 276 (1985). Under South Carolina law, the statute of limitations for a personal injury claim is three years. See S.C. CODE ANN. § 15–3–530(5). Consequently, it has been held that "[t]he statute of limitations for section 1983 causes of action arising in South Carolina is three years." Hamilton v. Middleton, Civ. A. No. 4:02-1952-23, 2003 WL 23851098, at *4 (D.S.C. June 20, 2003); see also Simmons v. South Carolina State Ports Authority, 694 F.2d 63, 64 (4th Cir.1982) (under previous statute); Hoffman v. Tuten, 446 F. Supp. 2d 445, 459-60 (D.S.C. 2006).

Defendants attached the Affidavit of Angela Hardin, an Inmate Grievance Coordinator at the South Carolina Department of Corrections ("SCDC"), to their Motion for Summary Judgment. (See Dkt. No. 40-3.) Ms. Hardin attached a copy of Grievance No. KRCI-0691-09 as Exhibit A to her Affidavit. (Id.) Ms. Hardin states that Plaintiff filed this grievance on April 13, 2009. (Hardin Aff. ¶ 18.) Exhibit A reveals that Plaintiff appealed the denial of his Step 1 Grievance; the denial of the Step 2 Grievance is dated November 3, 2009. (Dkt. No. 40-3 at 12 of 16.) It appears that Plaintiff was notified of the denial of his Step 2 Grievance on November 12, 2009. (Id.) Plaintiff dated his Complaint December 6, 2012, and it is stamped December 7, 2012, by the prison mail room. (See Dkt. No. 1 at 6 of 6; Dkt. No. 1-2 at 3 of 3.) Even if Plaintiff's Complaint were considered filed on December 6, 2012, it was filed more than three years after Plaintiff's Step 2 Grievance was denied and more than three years after Plaintiff received the denial of his Step 2 Grievance.

Plaintiff argues in his Response that the statute of limitations has not run on the instant claim because "the merits of [his] SMU claim [were] properly been raised in the ALJ court and remain[] pending in that court . . . ." (Dkt. No. 57 at 2 of 11.) Plaintiff attached his "Brief of Appellant" regarding Grievance No. KRCI-0691-09, stamped "filed" by the Administrate Law Court in September of 2012, to his Response. (See Dkt. No. 57-1 at 1-6

5

of 40.) Although Defendants filed a Reply, they did not address Plaintiff's argument about his appeal to the Administrative Law Court. (See Dkt. No. 62.) Magistrate Judge Marchant, in a Report and Recommendation adopted by Judge Norton, addressed this very issue in Freeman v. Haselden, Civ. A. No. 9:11-2113-DCN-BM, 2012 WL 3962748, at * (D.S.C. Feb. 24, 2012) (adopted at 2012 WL 3981137 (D.S.C. Sept. 11, 2012)). Albeit in dicta, Judge Marchant stated,

> Because the statute of limitations for a § 1983 claim relies on the state statute for personal injury claims, federal courts must "also borrow [ ] the state's tolling rules-including any equitable tolling doctrines". Peoples [v. Rogers, Civ. A. No. 8:10-24-CMC-BHH,] 2010 WL 424201, at *1 [(D.S.C. Feb. 1, 2010)] citing Smith v. City of Chicago Heights, 951 F.2d 834, 839–840 (7th Cir.1992). Under the applicable state law tolling rules, "a federal court applying South Carolina law must toll the statute of limitation if a 'statutory prohibition' exists which prevents a Plaintiff's cause of action". Peoples, 2010 WL 424201, at * 2; citing S.C. Code Ann. § 15–3–100. Applying this principal, it is clear that there was no statutory prohibition preventing Plaintiff from pursuing his claim in federal court after the denial of his Step 2 Grievance on May 4, 2007. Duncan [v. Langenstein, Civ. A. No. 8:07-0268-MBS], 2008 WL 153975, at *5 [(D.S.C. Jan. 14, 2008)]; Charles [v. Ozmint, Civ. A. No. 2:05-2187-DCN-RSC], 2006 WL 1341267, at * 4, n. 4 [(D.S.C. May 15, 2006)]. Therefore, South Carolina's tolling rules would not have tolled the running of the statute of limitations past that date.

Freeman, 2012 WL 3962748, at *3; see also Brown v. Evans Corr. Inst. Med. Staff, Civ. A. No. 2:06-2464-DCN-RSC, 2007 WL 1290359, at *4 (D.S.C. Apr. 30, 2007) (finding claim of excessive force was exhausted within meaning of PLRA when his Step 2 grievance was denied by SCDC). On the analysis as explained in Freeman, Plaintiff filed the instant action more than three years after he received notice of the denial of his Step 2 Grievance.

The undersigned recognizes, however, that Plaintiff might still be entitled to equitable tolling. See Freeman, 2012 WL 3962748, at *3.[1] Furthermore, it is worth noting that Plaintiff

---

[1]Such an argument by Plaintiff would seem to have merit given what appears to be a diligent pursuit of this claim in the Administrative Law Court. See Hooper v. Ebenezer Sr. Servs. & Rehabilitation Ctr., 386 S.C. 108, 116, 687 S.E.2d 29, 32-33 (2009) (citing Irby v. Fairbanks Gold Mining, Inc., 203 P.3d 1138, 1143 (Alaska 2009), for the following principle: "Under the doctrine of

6

complains of being *continuously* held in SMU for approximately *three years*, not just that Plaintiff was placed in SMU in 2008. See Shannon v. S.C. Dep't of Corrs., Civ. A. No. 6:12-2938-JFA-KFM, 2013 WL 6322160, at *5-6 (D.S.C. Dec. 4, 2013).

It is undisputed that Plaintiff was confined in SMU for a little over three years. (See Patterson Aff. ¶ 8.) Defendant Patterson, employed by SCDC as Director of Region Two in the Office of the Deputy Director for Operations, states in his Affidavit,

> 3. In October 2008, while incarcerated at Ridgeland Correctional Institution ("Ridgeland"), it was determined that Plaintiff Albarr-Ali Abdullah #191449 ("Inmate Abdullah") and several other inmates were involved with the making of keys that would open the door to the recreation yard.
>
> 4. Several confidential informants stated that Inmate Abdullah was holding the key device, which was being made out of cafeteria trays.
>
> 5. One of the other involved inmates stated that he was planning on escaping because he had access to tools that would allow him to get through the fence.
>
> 6. As a result of this potential security breach, the involved inmates, including Inmate Abdullah, were placed in the Special Management Unit ("SMU") at Ridgeland and then transferred to different institutions.
>
> 7. Because of the ongoing security concerns associated with Inmate Abdullah and the other inmates, they continued to be housed in the SMU at their new institutions.

(Patterson Aff. ¶¶ 3-7.)

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." Wilkinson v. Austin, 545 U.S. 209, 221 (2005). It is well settled that prisoners do not have a constitutionally recognized liberty interest in a particular security classification or prison placement. Hewitt

---

equitable tolling, when a party has more than one legal remedy available, the statute of limitations is tolled while the party pursues one of the possible remedies.").

7

v. Helms, 459 U.S. 460, 468 (1983) (no constitutional right under the Due Process Clause to a particular security classification or prison placement). In Sandin v. Connor, 515 U.S. 472 (1995), the United States Supreme Court held that a change in the condition of a prisoner's confinement that does not exceed the scope of the original sentence gives rise to a federally-protected liberty interest only if it "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484.

Although "a prison's internal security is peculiarly a matter normally left to the discretion of prison administrators," Rhodes v. Chapman, 452 U.S. 337, 349 n.14 (1981), the facts of this case are troubling. Plaintiff was held in SMU *for three years*. Plaintiff contends he *never* had a hearing; Defendants do not appear to contest that allegation but instead assert that the required thirty-day reviews were performed. Plaintiff asserts–and the Defendants do not dispute–that Plaintiff was never charged with a disciplinary infraction pertaining to the alleged escape plot. In fact, Plaintiff contends that he has never–in his 22 years of incarceration–been convicted of any disciplinary offense. (See Dkt. No. 57 at 5 of 11.)

The undersigned cannot recommend granting Defendants' motion on the instant claim. Defendants assert that "inmates do not have a liberty interest in any particular security or custody status." (Dkt. No. 40-1 at 19 of 25.) Although this statement is true, a federally-protected liberty interest exists if the change in the condition of confinement "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484. In Beverati v. Smith, 120 F.3d 500 (4th Cir. 1997), the Fourth Circuit stated,

> In order to determine whether the inmates possessed a liberty interest, we must compare the conditions to which they were exposed in administrative segregation with those they could expect to experience as an ordinary incident of prison life. This analysis necessarily is fact specific in that it

> requires a determination of the conditions the prisoner maintains give rise to a liberty interest and those incident to normal prison life.

Beverati, 120 F.3d at 503 (citations omitted); see also Shoats v. Horn, 213 F.3d 140, 144 (3d Cir. 2000) (in considering whether a protected liberty interest exists under Sandin, the court must consider the duration of the confinement and the conditions of that confinement in relation to other prison conditions). The undersigned cannot determine–on the instant record–whether Plaintiff's three years of confinement in the SMU gave rise to a liberty interest. The record contains no evidence about the conditions in SMU as compared to the conditions faced by prisoners not confined in the SMU, and the case *sub judice* falls somewhere between the six months at issue in Beverati, 120 F.3d 500 (no liberty interest), and the eight years at issue in Shoats, 213 F.3d 140 (liberty interest found). For purposes of the instant Report and Recommendation, the undersigned assumes that Plaintiff's three-year confinement in SMU gives rise to a liberty interest protected by the Fourteenth Amendment.

Given that assumption, the next question is what process was due to Plaintiff. Although Sandin abrogated Hewitt's "methodology for establishing the liberty interest," the case "remain[s] instructive for [its] description of the appropriate level of procedural safeguards." Wilkinson, 545 U.S. at 229. Hewitt discussed the procedure required by the Due Process Clause "in order to confine an inmate feared to be a threat to institutional safety to administrative segregation." Hewitt, 459 U.S. at 474. The Hewitt Court stated,

> We think an informal, nonadversary evidentiary review sufficient both for the decision that an inmate represents a security threat and the decision to confine an inmate to administrative segregation pending completion of an investigation into misconduct charges against him. An inmate must merely receive some notice of the charges against him and an opportunity to present his views to the prison official charged with deciding whether to transfer him to administrative segregation. Ordinarily a written statement by the inmate will accomplish this purpose, although prison administrators may find it more useful to permit oral presentations in cases where they believe a written

9

> statement would be ineffective. So long as this occurs, and the decisionmaker reviews the charges and then-available evidence against the prisoner, the Due Process Clause is satisfied.

Hewitt, 459 U.S. at 476.

In the instant case, Petitioner contends that he was placed in SMU, for what ultimately became a three-year period, without a hearing and in fact without "any type of notification" for this transfer. (See Dkt. No. 29-1 at 2 of 3; Dkt. No. 1 at 4 of 6.) In fact, it appears that during the entire course of his over three-year confinement in the SMU, Plaintiff was never given the benefit of a hearing. Under these facts, it appears that Plaintiff has been deprived of "the factual basis leading to consideration" for SMU placement as well as "a fair opportunity for rebuttal," two of "the most important procedural mechanisms for avoiding erroneous deprivations." Wilkinson, 545 U.S. at 225-26. In short, although "[d]ue process merely requires an informal, nonadversary review of the information supporting the confinement, including any response from the plaintiff, within a reasonable time after such confinement," it does not appear that Plaintiff was ever afforded such process. Bryant v. Lanham, Nos. 93-6073, 93-6143, 1994 WL 396345, at *2 (4th Cir. Aug. 1, 1994) (citing Hewitt, 459 U.S. at 472); see also Jackson v. Bostick, 760 F. Supp. 524, 531 (D. Md. 1991). Plaintiff's detention in the SMU may well have been justified, but whether Plaintiff "ultimately deserved to be placed in [SMU] 'is irrelevant to the question of whether he received due process on his way there.'" Bryant, 1994 WL 396345, at *3 (quoting Layton v. Beyer, 953 F.2d 839, 847 (3d Cir. 1992)). On the instant record, the undersigned recommends denying Defendants' Motion for Summary Judgment as to the Plaintiff's due process claim.[2]

---

[2] The undersigned notes that Defendants seek summary judgment on this claim on many grounds, one of which is their contention that they are entitled to qualified immunity on Plaintiff's claim related to placement in the SMU. In light of the holdings in Hewitt, 459 U.S. 460, and Wilkinson, 545 U.S. 209, the undersigned cannot agree with Defendants on this point.

10

**B. Claims Related to Legal Box**

As noted above, on or about December 21, 2012, Plaintiff amended his Complaint to add a claim concerning his legal box. (See Dkt. No. 6.) Plaintiff asserted therein that on October 9, 2008, Defendants Wiggins, Lawery, and Bouie "confiscated [Plaintiff's] legal box at Ridgeland Correctional Institution. (Dkt. No. 6 at 1 of 2.) Plaintiff alleges that although his property was inventoried, they "refused to list [Plaintiff's] legal box as part of the items which were taken from [Plaintiff]." (Id.) Plaintiff appears to allege he did not know the legal box would not be returned until he was released from the SMU. (Id. at 1-2.)

In his Response in Opposition to Defendants' motion as to this claim, Plaintiff states that he has discovered that the inventory sheet signed by Defendant Lowery did, in fact, list the Plaintiff's legal box. (Dkt. No. 57 at 7 of 11.) He complains, however, that he "has still not been given the legal box or its contents." (Id.)

The undersigned recommends granting summary judgment to Defendants on Plaintiff's claim related to his legal box. To the extent that Plaintiff seeks to bring a § 1983 action simply for his lost property, that claim necessarily fails. The Due Process Clause of the Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." However, the Due Process Clause is not implicated by a negligent act of a state official causing unintended loss of or injury to life, liberty, or property. Daniels v. Williams, 474 U.S. 327 (1986); Pink v. Lester, 52 F.3d 73, 75 (4th Cir.1995). Thus, to the extent Plaintiff's claim for lost property sounds in negligence, that claim fails.

Furthermore, an intentional deprivation of property by a state employee, if unauthorized, does not violate the Due Process Clause if a meaningful post-deprivation remedy for loss is available. Hudson v. Palmer, 468 U.S. 517, 536 (1984). In South Carolina, prisoners may bring an action for recovery of personal property against officials

who deprive them of property without state authorization. See McIntyre v. Portee, 784 F.2d 566, 567 (4th Cir.1986) (citing S.C. Code Ann. § 15-69-10 et seq.). Such an action provides "a post-deprivation remedy sufficient to satisfy due process requirements." Id. (citing Parratt v. Taylor, 451 U.S. 527 (1981)). As such, any due process claim for deprivation of property fails.

To the extent Plaintiff attempt to bring an access to the courts claim, that claim also fails. As the Supreme Court stated in Bounds v. Smith, 430 U.S. 817, 828 (1977), "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." However, in order to succeed on any access-to-the-courts claim, a prisoner is required to show actual prejudice to his litigation. Lewis v. Casey, 518 U.S. 343, 349 (1996); see also Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996). A prisoner can satisfy this requirement by demonstrating that a non-frivolous legal claim was frustrated or impeded by some actual deprivation of access. However, in asserting a claim for denial of access to the courts, "a prisoner cannot rely on conclusory allegations. Specificity is necessary . . . ." Cochran, 73 F.3d at 1317 (citing White v. White, 886 F.2d 721, 723-24 (4th Cir. 1989)).

Although Plaintiff alleges that he "would have been released from prison with support of the materials in [his] legal box several years ago," Plaintiff does not specify what the box contained or how such materials would have secured his release from prison. (Dkt. No. 6 at 2 of 2.) Plaintiff asserts in his Response in Opposition that he "clearly should not have to explain the value of the papers in his legal box as a basis of support to his claim that his release from prison has been obstructed for years by the destruction" of his legal box, and he cites to the order on his application for post-conviction relief. (Dkt. No. 57 at 8 of 11.) Plaintiff is incorrect in his assertion that he does not have to explain the value of the lost

12

legal papers; the law plainly states otherwise. See Cochran, 73 F.3d at 1317; see also Hayman v. Vaughn, Civ. A. No. 91-7490, 1995 WL 8013, at *4 (E.D. Pa. Jan. 9, 1995) (granting summary judgment to the defendants because the plaintiffs' "allegations of an early prison release are fatally vague and speculative"). Furthermore, the order to which Plaintiff cites–the order on his application for post-conviction relief–was filed on May 29, 1996. (See Dkt. No. 57-1 at 12-18 of 40.) That order, which granted post-conviction relief, was filed years before Plaintiff's legal box was lost or destroyed. The fact that Plaintiff's application for post-conviction relief was granted in May of 1996 does not support Plaintiff's access to the courts claim, and in any event, that order on post-conviction relief was ultimately reversed by the South Carolina Supreme Court. See Legare v. State, 333 S.C. 275, 278, 509 S.E.2d 472, 473 (1998). In addition, Plaintiff's habeas petition was fully litigated in this court. See Legare v. Rushton, Civ. A. No. 2:99-cv-00289-MBS (D.S.C.). Accordingly, the undersigned recommends granting summary judgment to Defendants on the claim related to Plaintiff's legal box, thereby dismissing Defendants Wiggins, Lawery, and Bouie from the instant action.

II. Plaintiff's Motion for Injunctive Relief (Dkt. No. 29)

On or about May 22, 2013, Plaintiff filed a Motion for Injunctive Relief, docketed by the Clerk as a Motion for Preliminary Injunction. (Dkt. No. 29.) In the instant motion, Plaintiff contends that "based on the evidence of" one of Plaintiff's state cases, "any dispositive motions filed in this [federal] case would be moot due to undue prejudice to the state court . . . ." (Dkt. No. 29 at 1 of 1.) Plaintiff seeks an order requiring Defendants to "recalculate his sentence as after a ruling on the merits of this action and claim also pending in the Administrative Law Court this Plaintiff would be immediately eligible for a parole hearing and release from prison . . ." (Id.)

Plaintiff's claims related to his parole hearing and his ability to earn work credits have been dismissed. (See Dkt. No. 59.) Accordingly, the undersigned recommends dismissing Plaintiff's Motion for Injunctive Relief (Dkt. No. 29) as moot.

## **CONCLUSION**

Wherefore, it is RECOMMENDED that Defendants' Motion for Summary Judgment (Dkt. No. 40) be GRANTED IN PART and DENIED IN PART. Specifically, it is RECOMMENDED that summary judgment be granted on Plaintiff's access to the courts claim, and that Defendants Wiggins, Lawery, and Bouie be dismissed from the instant action. It is also RECOMMENDED that summary judgment be denied to Defendants Patterson and Reynolds on Plaintiff's due process claim.

It is further RECOMMENDED that Plaintiff's Motion for Injunctive Relief (Dkt. No. 29) be DISMISSED as moot.

IT IS SO RECOMMENDED.

s/Bruce Howe Hendricks
United States Magistrate Judge

January 31, 2014
Charleston, South Carolina

**The parties' attention is directed to the important notice on the next page.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).