IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

RECEIVED
USDC, CLERK, CHARLESTON, SC
2014 MAR -4  A 9:00

| | |
|---|---|
| ALBARR ABDULLAH, a.k.a. Albert Legare, | No. 2:12-cv-3499-RMG |
| Plaintiff, | **ORDER** |
| v. | |
| WARDEN REYNOLDS of Kershaw, DENNIS PATTERSON, Deputy Director of Operation, SGT. WIGGINS, LT. LAWERY LT. BOUIE, | |
| Defendants. | |

This matter is before the Court on the Report and Recommendation ("R&R") of the Magistrate Judge recommending that the Court grant in part and deny in part Defendants' motion for summary judgment, and deny Plaintiff's motion for injunctive relief as moot (Dkt. No. 66). For the reasons set forth below, the Court adopts portions of the R & R. Accordingly, Plaintiff's Motion for Injunctive Relief is DENIED AS MOOT. Defendants' Motion for Summary Judgment (Dkt. No. 40) is GRANTED IN PART and DENIED IN PART. And the Court RECOMMITS this matter to the Magistrate Judge for further factual development.

## I. BACKGROUND

The Court previously dismissed Plaintiff's claims regarding the alleged denial of a parole hearing, Plaintiff's claims regarding the loss of opportunity to earn work credits, and the defendants related to these claims. (Dkt. No. 59). Still pending are Plaintiff's claim that he was unlawfully held in the Special Management Unit (SMU) for three years and his claim that his

-1-

legal box was unlawfully confiscated. (*See* Dkt. No. 6; Dkt. No. 6-3 at 4-5). Defendants filed a motion for summary judgment on all claims. (Dkt. No. 40). Plaintiff has filed a Motion for Injunctive Relief related to his parole hearing claims, which have previously been dismissed by the Court. (*See* Dkt. No. 29).

Pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2)(d) DSC, this case was automatically referred to a Magistrate Judge for pretrial proceedings. The Magistrate Judge recommends that Plaintiff's motion for injunctive relief be denied as moot, as it pertains to claims already dismissed by the Court. (Dkt. No. 66 at 13-14). The Magistrate Judge recommends that Defendants' motion for summary judgment be granted with regard to Plaintiff's claims related to the confiscation of his legal box and denied with regard to Plaintiff's claims related to his placement in SMU. Plaintiff has not filed objections to the Magistrate Judge's R&R. Defendants' filed a timely objection to the R & R, objecting to the Magistrate Judge's recommendation that their motion for summary judgment be denied with regard to Plaintiff's SMU claims (Dkt. No. 69).

## II. LEGAL STANDARD

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). The Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). This Court may also "receive further evidence or recommit the matter to the magistrate judge with instructions." *Id.*; *accord* Fed. R. Civ. P. 72.

This Court is charged with making a de novo determination of those portions of the R & R or specified proposed findings or recommendations to which objection is made. *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (quoting 28 U.S.C. § 636(b)(1)); *accord* Fed. R. Civ. P. 72(b). As to portions of the R & R to which no specific objection has been made, this Court "must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Id.* (quoting Fed. R. Civ. P 72 advisory committee note). Moreover, in the absence of specific objections to the R & R, the Court need not give any explanation for adopting the Magistrate Judge's analysis and recommendation. *See Camby v. Davis*, 718 F.2d 198, 199-200 (4th Cir. 1983).

### III. DISCUSSION

**A. Plaintiff's Motion for Injunctive Relief**

No party has objected to the Magistrate Judge's recommendation that this motion be denied as moot. The Court agrees with the Magistrate Judge that, because Plaintiff's claims related to his parole hearing and ability to earn work credits have been dismissed, this motion is now moot. Therefore, the Court adopts this portion of the R & R and denies the motion as moot.

**B. Claims Related to Legal Box**

No party has objected to the Magistrate Judge's recommendation that Defendant's motion for summary judgment be granted on these claims. The Court finds that the Magistrate Judge applied the correct law to the operative facts in reaching her recommendations on these claims. The Court agrees that Plaintiff's due process claims related to the legal box necessarily fail for the reasons stated in the R & R and that Plaintiff has failed to show any prejudice, as is required in a access-to-the-courts claim. Thus, the Court adopts this portion of the R & R and

grants summary judgment on this claim. Accordingly, Defendants Wiggins, Lawery and Bouie are dismissed from this action.

## C. Claims Related to SMU Placement

### 1. Facts

Plaintiff was placed in the SMU on either October 9 or 10, 2008. (Dkt. No. 6-3 at 4; Dkt. No. 40-4 at ¶ 8). Patterson's affidavit states that it was determined that Plaintiff and several other inmates "were involved with the making of keys that would open the door to the recreation yard," and that "[a]s a result of this potential security breach, the involved inmates. . . were placed in the SMU. . .and transferred to different institutions." (Dkt. No. 40-4 at ¶¶ 3-6). Because of "ongoing security concerns" not delineated by Mr. Patterson, he states that these inmates "continued to be housed in the SMU at their new institutions." (*Id.* at ¶ 7).

While Plaintiff was informed that he was on Security Detention status because of security concerns, he was never informed of what the security concerns were or allowed to address them. (*See* Dkt. No. 40-3 at 6-13). Plaintiff sent multiple Requests to Staff Members and wrote to a SCDC staff attorney, repeatedly asking why he was in SMU. (Dkt. No. 40-3 at 8-11). After learning that he was placed in SMU "because of security concerns," he filed a formal grievance on April 15, 2009, stating that he had never been before a classification committee and asking to be released to the general population. (Dkt. No. 40-3 at 6). After having his grievance denied, Plaintiff appealed, asking for "what purposes is [Plaintiff] on S.D.?" (Dkt. No. 40-3 at 12). An official denied his appeal stating that, "[a]gency records indicate due to security concerns you were placed in Security Detention on October 23, 2008,"[1] and that "[d]ocumentation provided

---

[1] In evidence submitted by Defendants this date varies between October 10 and 23, 2008.

reveals the SMU Classification Committee conducted thirty (30) day reviews as required." (Dkt. No. 40-3 at 12). Plaintiff received the denial of his appeal on November 12, 2009. (*Id*). Plaintiff filed an additional grievance regarding his confinement in SMU in March of 2011, and it was returned unprocessed as a duplicate issue. (Dkt. No. 6-3 at 4).

Plaintiff was released to the prison's general population on October 31, 2011, more than three years after he was placed in SMU.[2] (Dkt. No. 40-4 at ¶ 8). Nothing in the record indicates why Plaintiff was released from SMU in 2011. In September of 2012, Plaintiff appealed multiple grievances, including the 2009 grievance relating to his SMU placement, to the Administrative Law Court, asserting, among other things, that he was "never provided any type of hearing to argue that he did not belong in SMU."[3] (Dkt. No. 57-1 at 1-6). Plaintiff states that this claim is still pending in the Administrative Law Court. (Dkt. No. 57 at 2). Plaintiff filed this action on December 7, 2012. (Dkt. No. 1-2 at 2 (showing the envelope stamped by the prison mail room on December 7, 2012)).[4]

2. Statute of Limitations

The length of the statute of limitations in a Section 1983 claim is borrowed from state law. *E.g., Wallace v. Kato*, 549 U.S. 384, 387 (2007). Thus, the statute of limitations for a

---

[2] In his verified Complaint, Plaintiff states that he was released to the prison's general population on November 30, 2011, rather than October 31, 2011. (Dkt. No. 6-3 at 5). However, this one-month difference does not impact the Court's analysis below.

[3] It appears Plaintiff's appeal was untimely, at least as to the 2009 grievance. *See Al-Shabazz v. State*, 338 S.C. 354, 527 S.E.2d 742, 754 (S.C. 2000) ("The inmate must file and serve a notice of appeal upon specified parties within thirty days of receipt of written notice of Department's final decision.").

[4] Plaintiff dated the Complaint December 6, 2012. (Dkt. No. 1 at 6). If the Court assumes December 6th as the filing date, it does not change the analysis below.

Section 1983 claim in South Carolina is three years. *See, e.g., Williams v. City of Sumter Police Dep't*, No. 3:09-cv-2486, 2011 WL 723148 at *3 (D.S.C. Feb. 23, 2011) (citing cases). Any state rules regarding the tolling of the statute of limitations also apply.[5] *Hardin v. Straub*, 490 U.S. 536, 539 (1989); *see also Heimeshoff v. Hartford Life & Accident Ins. Co.*, 134 S. Ct. 604, 616 (2013).

However, "the accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law." *Wallace*, 549 U.S. at 388 (emphasis in original). The accrual date of a § 1983 cause of action is governed by "federal rules conforming in general to common-law tort principles." *Id.* Thus, accrual occurs when "the plaintiff has a complete and present cause of action," that is when "the plaintiff can file suit and obtain relief." *Id.* (internal quotes and citations omitted). Here, Plaintiff could have filed suit once he exhausted his administrative remedies on November 12, 2009, so normally the statute of limitations would run from that date. *Id.*

However, the Supreme Court in *Wallace* went on to recognize that general tort principles also provide "refinement[s] to be considered" in the context of certain claims *See id.* In *Wallace*, the § 1983 claim was analogous to a false arrest and false imprisonment claim, and the Supreme Court held that the statute of limitations did not begin to run until the alleged false

---

[5] For example, the statute of limitations is tolled in South Carolina during the time that a litigant is statutorily barred from bringing suit. S.C. Code § 15-3-100. In a Section 1983 action with respect to prison conditions, a plaintiff cannot file suit until he has exhausted his administrative remedies. *See* 42 U.S.C. § 1997e(a). Thus, assuming the cause of action has accrued, the statute is tolled until the prisoner has exhausted his administrative remedies. *Freeman v. Haselden*, No. 9:11-cv-2113, 2012 WL 3962748 at *2 (D.S.C. Feb. 24, 2012), *adopted by* 2012 WL 3981137.

imprisonment ended, even though suit could have been filed at the time of the initial arrest. *Id.* at 389.[6] The "refinement" to be considered here is the continuing tort or continuing wrong rule.

The continuing tort rule is a "key exception[] to the general rule that torts accrue when the wrong is committed." 51 Am. Jur. 2d *Limitation of Actions* § 147. This rule provides that where a tort "involves a continuing or repeated injury, the cause of action accrues at and the statute of limitations begins to run from the date of the last injury or when the tortious acts or omissions cease." 4 Modern Tort Law: Liability and Litigation § 35:19 (2d ed.) (explaining the doctrine in the context of nuisance); *accord* 51 Am. Jur. 2d *Limitation of Actions* § 147. (explaining the doctrine generally).

The continuing tort or continuing violation rule is "a general principle of federal common law" and applies in Section 1983 cases. *Heard v. Sheahan*, 253 F.3d 316, 318-19 (7th Cir. 2001); *see also Turley v. Rednour*, 729 F.3d 645, 651 (7th Cir. 2013) (Where inmate alleged that "prison officials repeatedly and regularly imposed lockdown for improper purposes, . . . [t]he statute of limitations began running form the last date of lockdown."); *Lavellee v. Listi*, 611 F.2d 1129, 1132 (5th Cir. 1980) ("[T]he allegation of a failure to provide needed and requested medical attention constitutes a continuing tort, which does not accrue until the date medical attention is provided."). A violation is "continuing" if "it would be unreasonable to require or even permit [an inmate] to sue separately over every incident of the defendant's unlawful conduct." *Heard*, 253 F.3d at 319.

---

[6] Because false imprisonment "consists of detention without legal process, a false imprisonment ends once the victim becomes *held pursuant to such process*—when, for example, he is bound over by a magistrate or arraigned on charges." *Id.* (emphasis in original).

Here, Plaintiff's allegations that he was held in SMU in violation of his constitutional rights constitute a continuing wrong. It would be nonsensical to require him to file a suit for each day, hour, or minute that he was housed in SMU. Indeed, he was not allowed to file additional grievances regarding his placement; these later grievances were returned as "duplicative." Therefore, the statute of limitations did not begin to run until he was *released* from SMU. Even taking the Defendant's release date of October 31, 2011, Plaintiff's suit was filed within the three-year statute of limitations. Therefore, the Court finds that Plaintiff's claim is not barred by the statute of limitations.

### 3. Liberty Interest

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). A change in condition of confinement will implicate a liberty interest only where it "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

To determine whether Plaintiff possesses a liberty interest, the Court must "compare the conditions to which [he was] exposed in [SMU] with those [he] could expect to experience as an ordinary incident of prison life." *Beverati v. Smith*, 120 F.3d 500, 503 (4th Cir. 1997). Courts also consider the length of time that an inmate is exposed to the changed conditions. *See id.* at 504 ("[A]lthough the conditions were more burdensome than those imposed on the general prison population, they were not so atypical that exposure to them for six months imposed a significant hardship in relation to the ordinary incidents of prison life."); *Shoats v. Horn*, 213

F.3d 140, 144 (3d. Cir. 2000) ("[T]he record suggests that Shoats' long-term [eight-year] confinement has imposed a significant hardship on him in relation to the ordinary incidents of prison life."). This analysis is necessarily fact specific, but it is a legal determination that must be made by the Court. *Id.* at 503.

Here, the Court agrees with the Magistrate Judge that the record is insufficient for a proper *Sandin* analysis; there is simply not enough information about the conditions in SMU as compared to the general population. (*See* Dkt. No. 66 at 9). However, clearly the conditions of SMU are different from that of the general population.[7] (*See* Dkt. No. 40-5 at 4-19 (policy regarding the SMU)). The question for this Court is whether they were so "atypical that exposure to them for [three years] imposed a significant hardship in relation to the ordinary incidents of prison life." *Beverati*, 120 F.3d at 504. The Court can simply not answer this question on the record before it. Therefore, the Court denies Defendants' motion on this ground without prejudice, and recommits the matter to the Magistrate Judge for further factual development.

4. Due Process

Defendants also contend that, even if Plaintiff's three-year placement in SMU implicated a liberty interest, he received due process, and they are entitled to summary judgment. The Court disagrees. To determine whether the procedural mechanisms in place provide due process,

---

[7] The Court notes that inmates in SMU are classified as either Level I or Level II, and the conditions of confinement for Level I inmates are considerably more burdensome, and more likely to implicate a liberty interest, than conditions for Level II inmates. (*See* Dkt. No. 40-5 at 4-19 (policy regarding the SMU)). It appears that Plaintiff was classified as Level II. (*See* Dkt. No. 40-4 at 10-14 (classifying Plaintiff as "SD/L2" or "DD/L2")).

the Court considers three factors: (1) the significance of the inmate's interest in avoiding erroneous placement in SMU, (2) the risk of erroneous placement under the procedures in place and probative value of additional procedures, and (3) the State's interest, including administrative burdens that additional procedural requirements would entail. *Wilkinson*, 545 U.S. at 225-27; *accord Lovelace v. Lee*, 472 F.3d 174, 202 (4th Cir. 2006).

Under the first factor, because "[p]risoners held in lawful confinement have their liberty curtailed by definition, . . . the procedural protections to which they are entitled are more limited than in cases where the right at stake is the right to be free from confinement at all." *Wilkinson*, 545 U.S. at 225. This interest is "more than minimal" but must be evaluated "within the context of the prison system and its attendant curtailment of liberties." *Id.*

With regard to the second factor, "[n]otice of the factual basis for a decision and a fair opportunity for rebuttal are among the most important procedural mechanisms for purposes of avoiding erroneous deprivations." *Wilkinson*, 545 U.S. at 226. Here, Plaintiff was never given notice of the factual basis for being held in SMU, nor given an opportunity for rebuttal. Defendants point to the grievance system, through which Plaintiff did, in fact, submit a grievance. However, Plaintiff's grievance was that he did not know why he was being held in SMU and, thus, he felt that his due process rights were being violated. (Dkt. No. 43-3 at 6). It was not an opportunity to address the factual basis of his placement.[8]

---

[8] Also disturbing is the fact that while Mr. Patterson testifies that Plaintiff was in SMU on "Security Detention" status, records attached to his affidavit indicate that the review committee continued Plaintiff's place in SMU on "SD" or "Security Detention" status sometimes but at other times continued his placement on "DD" or "Disciplinary Detention" status. (Dkt. No. 40-4 at 10-14). Yet Plaintiff asserts, and Defendants do not dispute, that Plaintiff has never been charged with a disciplinary infraction. (*See* Dkt. No. 57 at 5).

Turning to the third factor, SCDC policy already provides that an inmate may be present for the 30-day review if security staffing allows. (Dkt. No. 40-5 at 8). Apparently, staffing was not available for Plaintiff to be present at *any* of the thirty-eight monthly reviews conducted regarding his three-year placement. If an inmate is present at such a review, is notified of the factual basis for his placement and is allowed to address the factual basis for his placement, that procedural mechanism would be sufficient. Similarly, SCDC's grievance procedure may be adequate *if* an inmate were informed of the factual basis for his placement and allowed to address the factual basis for his placement through the grievance procedure. See *Bryant v. Lanham*, 30 F.3d 128 (table), 1994 WL 396345 at *2 (4th Cir. 1994) (unpublished) ("Due process merely requires an informal, nonadversary review of the information supporting the confinement, including any response from the inmate, within a reasonable time after such confinement."). The additional burden of informing an inmate of the factual basis for his placement, so that he may address it through the already existing grievance procedure, is slight.

Weighing the three *Mathews* factors here, the Court finds that the procedural mechanisms afforded Plaintiff were not adequate to safeguard a liberty interest, *if it exists*, in not being placed in SMU. As the Magistrate Judge points out, Plaintiff's placement in SMU may well have been justified, but whether Plaintiff deserved to be in SMU is "irrelevant to the question of whether he received due process on his way there." *Layton v. Beyer*, 953 F.2d 839, 847 (3d. Cir. 1992). Therefore, the Court adopts this portion of the R & R and denies Defendants' motion on this ground.

## IV. CONCLUSION

For the reasons stated above, the Court adopts portions of the R & R as noted above. Plaintiff's Motion for Injunctive Relief (Dkt. No. 29) is **DENIED AS MOOT**. Defendant's Motion for Summary Judgment (Dkt. No. 40) is **GRANTED IN PART AND DENIED IN PART**.

The Court **GRANTS** summary judgment to Defendants on Plaintiff's claims related to the legal box and **DISMISSES** Defendants Wiggins, Lawery, and Bouie from this action. The Court **DENIES WITHOUT PREJUDICE** Defendant's motion for summary judgment on Plaintiff's due process claim related to his placement in SMU. The Court **RECOMMITS** this matter to the Magistrate Judge for further factual development on the conditions of Plaintiff's confinement in SMU compared to that in general population.

**IT IS SO ORDERED.**

_____
Richard Mark Gergel
United States District Court Judge

March 3, 2014
Charleston, South Carolina